1   SHANA E. SCARLETT (217895)
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   715 Hearst Avenue, Suite 202
    Berkeley, CA  94710
3   Telephone: (510) 725-3000
    Facsimile:  (510) 725-3001
4   shanas@hbsslaw.com

5
    STEVE W. BERMAN
6   THOMAS E. LOESER (202724)
    HAGENS BERMAN SOBOL SHAPIRO LLP
7   1918 Eighth Avenue, Suite 3300
    Seattle, WA  98101
8   Telephone:  (206) 623-7292
    Facsimile:   (206) 623-0594
9   steve@hbsslaw.com
    toml@hbsslaw.com
10
    Attorneys for Plaintiffs and the Class
11
    [Additional Counsel on Signature Page]
12

13                     UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16

17   MAUDER and ALICE CHAO;            )   No.
     DEOGENESO and GLORINA PALUGOD, on )
18   behalf of themselves and all others similarly )   CLASS ACTION COMPLAINT
     situated,                          )
19                                      )   1.  VIOLATION OF CALIFORNIA
                                        )       CIVIL CODE §§ 1688, ET SEQ.
20                         Plaintiffs,  )
                                        )   2.  NEGLIGENT
21           v.                         )       MISREPRESENATION
                                        )
22                                      )   3.  UNJUST ENRICHMENT
     AURORA LOAN SERVICES, LLC,         )
23                                      )   4.   BREACH OF THE IMPLIED
                           Defendant.   )        COVENANT OF GOOD FAITH
24                                      )        AND FAIR DEALING
                                        )
25                                      )   5.  VIOLATION OF UNFAIR
                                        )       BUSINESS PRACTICES ACT [CAL.
26                                      )       BUS. & PROF. CODE §§ 17200, ET
                                        )       SEQ.]
27   _____)
                                        )   DEMAND FOR JURY TRIAL
28

010191-11 377040 V1

# TABLE OF CONTENTS

I.    INTRODUCTION............................................................................................. 1

II.   JURISDICTION............................................................................................... 3

III.  PARTIES......................................................................................................... 3

IV.   CONDITIONAL NOTICE OF RESCISSION................................................ 4

V.    FACTUAL BACKGROUND .......................................................................... 4

      A.   The Foreclosure Crisis .......................................................................... 4

      B.   Aurora Loan Services............................................................................. 5

      C.   California Law on Rescission of Contracts............................................ 5

      D.   Aurora Benefits Most from Extracting Workout Payments from Borrowers
           in Distress Then Foreclosing, as Opposed to Genuinely Offering Loan
           Modifications ........................................................................................ 6

      E.   Plaintiffs' Workout Agreement ............................................................. 8

           1.   Mauder and Alice Chao .............................................................. 8

           2.   Deogeneso and Glorina Palugod................................................. 10

VI.   CLASS ALLEGATIONS................................................................................ 13

VII.  CLAIMS FOR RELIEF ................................................................................. 15

VIII. PRAYER FOR RELIEF.................................................................................. 21

IX.   JURY TRIAL DEMANDED .......................................................................... 22

# I.   INTRODUCTION

1.     In the face of the escalating foreclosure crisis in the United States and especially in California, Defendant Aurora Loan Services, LLC ("Aurora") has further victimized those struggling to keep their homes by offering and inducing customers into illusory "Workout Agreements," which purport to offer hope of an opportunity to cure loan default, but in truth and fact are merely a ruse through which Aurora dupes homeowners into paying it tens of thousands of dollars immediately before losing their homes to foreclosures.  On information and belief, Aurora has reaped illicit profits from these actions exceeding $100 million.

2.     Plaintiffs and the Class entered into "Workout Agreements" with Aurora in which Plaintiffs promised to pay and paid tens of thousands of dollars on the seeming return promise of a review for loan modification and an opportunity to cure their default at the end of a review period. But Aurora's promises in return were empty; it foreclosed on Plaintiffs' and the Class members' homes *without any notice that loan modifications were denied and without allowing borrowers access to any "cure method" despite its promises in the Workout Agreement to do so.*  As a result, Aurora fraudulently induced its customers into entering the Workout Agreements and made no legally binding promises to Plaintiffs and the Class; Plaintiffs and the Class hereby tender back to Aurora any benefits they received under the Workout Agreements and are entitled to rescind.  In that alternative, Plaintiffs allege that Aurora breached its duty of good faith and fair dealing when it foreclosed on Plaintiffs' homes without first giving (1) notice that modification had been rejected; and (2) an opportunity to cure the default.

3.     Plaintiffs entered into Workout Agreements with Aurora, agreeing to large monthly payments over three or six months to halt foreclosure in the hopes of obtaining a cure method for the default of their loan, including possibly loan modification.  After the initial term of the Workout Agreements, Aurora often asked for continued monthly payments, telling customers that it was still reviewing for possible modification.

4.     In return for Plaintiffs' promises to make monthly payments, Aurora promised to waive legal rights for the duration of the Workout Agreement, at the end of which Plaintiffs would be entitled to "cure" their loan deficiency through:  (1) reinstatement (i.e., bring the loan current);

1   (2) payoff (i.e., refinancing with another lender to pay off the Aurora-serviced loan;

2   (3) modification at the discretion of Aurora; or (4) another workout "option" at the discretion of

3   Aurora.

4        5.     The Workout Agreements signed by Plaintiffs and members of the putative Class

5   were a sham. They were illusory because Aurora made no legally binding promises in exchange

6   for the borrowers' promises to make payments. The loan modifications and "other" workout

7   options were entirely at Aurora's discretion, and thus not a binding promise. The options to cure

8   by reinstatement or payoff were also illusory because Aurora's policy was to foreclose on

9   properties *with no notice whatsoever* to borrowers. Thus, borrowers had no opportunity to

10  reinstate or pay off their loans because they were never told that a modification or other workout

11  plan was denied. As a result, Plaintiffs' and Class members' consent to the Workout Agreements

12  was fraudulently obtained and Aurora's consideration for the Workout Agreements failed,

13  rendering such agreements *void ab initio* and subject to rescission.

14       6.     Having not received the promised benefit from Aurora, Plaintiffs and the Class are

15  entitled to rescind and obtain back from Aurora their promised (and delivered) consideration,

16  namely the payments that were made to Aurora under the Workout Agreements.

17       7.     In the alternative, should the Workout Agreements be deemed enforceable, Aurora

18  has breached its duty of good faith and fair dealing by foreclosing on Plaintiffs' properties without

19  first providing notice that modification had been rejected and an opportunity to cure the loan

20  default. Plaintiffs complied with all of their obligations under the Workout Agreements. At the

21  very least, Aurora was required by good faith and fair dealing to provide notice to Plaintiffs that

22  modification had been rejected and that Plaintiffs needed to invoke another of the permitted means

23  to cure their default at the end of the term, as required by the Workout Agreement.

24       8.     Through this Action, Plaintiffs seek to stop Aurora from preying on its customers

25  through its Workout Agreement scheme. Where Aurora intends to foreclose on a property, it must

26  not be able to extract thousands of dollars in additional payments with illusory promises and false

27  statements of opportunities to cure defaulted loans. Aurora has sold Plaintiffs' homes in

28

foreclosure and noticed their eviction.  At the very least Plaintiffs are entitled to a return of the payments they made under the illusory promise from Aurora that this could be avoided.

## II.    JURISDICTION

9.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State different from the Defendant.

10.    This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is licensed to do business in the state of California or otherwise conducts business in the state of California.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and the named Plaintiffs reside in this District.

12.    Intradistrict Assignment:  Assignment to the San Jose division of this Court is appropriate because Defendant does substantial business in this judicial district.  Moreover, Plaintiffs reside in Santa Clara County, as well as many of the class members, making assignment to the San Jose division appropriate.

## III.    PARTIES

13.    Plaintiffs Mauder and Alice Chao are a married couple residing in Los Altos, California.

14.    Plaintiffs Deogeneso and Glorina Palugod are a married couple residing in San Jose, California.

15.    Defendant Aurora Loan Services, LLC is a loan servicer headquartered in Littleton, Colorado and is currently doing business throughout the State of California.

CLASS ACTION COMPLAINT                                                          - 3 -

010191-11 377040 V1

## IV.   CONDITIONAL NOTICE OF RESCISSION[1]

16.   Plaintiffs and Class, by service of this Class Action Complaint on Defendant Aurora, hereby provide notice to Defendant, its subsidiaries and affiliates that the "Workout Agreements" described in this Complaint are subject to rescission and rescinded for the reasons set forth herein. Should the Court or trier of fact determine that the Workout Agreements are enforceable then this notice shall be of no force and effect.

## V.   FACTUAL BACKGROUND

### A.   The Foreclosure Crisis

17.   Over the last three years, the United States has been in a foreclosure crisis. A congressional oversight panel has recently noted that one in eight mortgages in the United States is currently in foreclosure or default.[2]

18.   In testimony before the United States Senate Subcommittee on Administrative Oversight and the Courts of the Committee on the Judiciary on July 23, 2009, Alys Cohen of the National Consumer Law Center testified as follows:

> Goldman Sachs estimates that, starting at the end of the last quarter of 2008 through 2014, 13 million foreclosures will be started. The Center for Responsible Lending, based on industry data, predicts 2.4 million foreclosures in 2009, and a total of 9 million foreclosures between 2009 and 2012. At the end of the first quarter of 2009, more than 2 million houses were in foreclosure. Over twelve percent of all mortgages had payments past due or were in foreclosure and over seven percent were seriously delinquent – either in foreclosure or more than three months delinquent. Realtytrac recently reported that an additional 300,000 homes go into foreclosure every month. These spiraling foreclosures weaken the entire economy and devastate the communities in which they are concentrated. Neighbors lose equity; crime increases; tax revenue shrinks.

(Hereafter, "Cohen Testimony," at pp. 6-7).[3]

---

[1]   In the event this case is certified as a class action, and the Workout Agreements deemed subject to rescission, notice of rescission will only be effective as to those potential Class members who do not opt-out of the Class.

[2]   Congressional Oversight Panel, Oct. 9, 2009 report at 3. Available at: http://cop.senate.gov/reports/library/report100909-cop.cfin.

[3]   Available online at: http://www.consumerlaw.org/issues/mortgage_servicing/content/Testimony-Worsening_forecl_072309.pdf.

010191-11 377040 V1

19.   California has been consistently one of the hardest hit by the housing crisis. California ranks fourth highest on the state foreclosure list in the United States for all of 2009. The number of total California properties with foreclosure filings in 2009 was 632,573. This represents nearly a 21% increase over 2008 and a 153% increase from 2007.[4]

20.   Economists predict that interest rate resets on the riskiest of lending products will not reach their zenith until sometime in 2011.[5]

**B.   Aurora Loan Services**

21.   Lehman Brothers purchased Aurora to originate and service mortgages it used to prop up its mortgage backed securities. Aurora originated roughly one-third of the mortgages that Lehman Brothers securitized. From 2004-2007 this was approximately $160 billion in loans.

22.   On September 15, 2008, Lehman Brothers filed the largest bankruptcy in the history of the United States. The financial services firm, which had been a stalwart on Wall Street since 1877, was doomed by the failure of billions of dollars in sub-prime and other low-rate mortgage securities held on its balance sheet. The engine that drove Lehman Brothers to financial collapse was Aurora and the loans it fed to its parent, Lehman Brothers.

**C.   California Law on Rescission of Contracts**

23.   California has codified the law concerning rescission of contracts in the Civil Code:

> **§ 1688.        Rescission extinguishes contract**
>
> A contract is extinguished by its rescission.
>
> **§ 1689.        When party to a contract may rescind**
>
> (a)   A contract may be rescinded if all the parties thereto consent
>
> (b)   A party to a contract may rescind the contract in the following cases:
>
>       (1)   If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained

---

[4]     http://www.realtytrac.com/contentmanagement/pressrelease.aspx?Channelid =9&itemid=8333

[5]     *See* Eric Tymoigne, *Securitization, Deregulation, Economic Stability, and Financial Crisis*, Working Paper No. 573.2 at 9, Figure 30, available at http://papers.ssrn.com/so13/papers.cfm?abstract_id=1458413 (citing a Credit Suisse study showing monthly mortgage rate resets).

through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.

(3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.

(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

(5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

(6) If the public interest will be prejudiced by permitting the contract to stand.

(7) Under the circumstances provided for in Sections 39, 1533, 1566, 1785, 1789, 1930 and 2314 of this code, Section 2470 of the Corporations Code, *Sections 331, 338, 359, 447, 1904* and *2030 of the Insurance Code* or any other statute providing for rescission.

Cal. Civ. Code §§ 1688-89.

24. California's Civil Code governing contract law, including rescission, are laws of general application, which do not seek in particular to regulate banking, lending, or the activities of federal thrifts. California's laws governing contracts have only an incidental effect on the banking and lending activities of Aurora, no different than the effect on any other contractual relationships. As a result, California's contract laws are not preempted by Office of Thrift Supervision ("OTS") regulations or the Home Owners Loan Act ("HOLA"). *See, e.g.*, 12 C.F.R. 560.2(c) (specifically excluding contract and commercial laws of general application from HOLA preemption).

**D.    Aurora Benefits Most from Extracting Workout Payments from Borrowers in Distress Then Foreclosing, as Opposed to Genuinely Offering Loan Modifications**

25. As a loan servicer, Aurora is paid by and beholden to the investors that hold the principal and interest rights to the loans Aurora services. The larger the face value of the pools of loans Aurora services, the more it makes. Quality of servicing and responsiveness to borrowers are irrelevant to the bottom line. In fact, for loans in default, past due, and/or on the brink of foreclosure, Aurora makes ***more money*** in fees. As such, it is in Aurora's interest to have loans in

CLASS ACTION COMPLAINT                                - 6 -

1    default and arrears for as long as possible prior to foreclosure, then foreclosing. Aurora stands only

2    to lose revenue by giving loan modifications to borrowers instead of foreclosing.

3       26.    It is, however, in Aurora's interest to delay foreclosure when by doing so it can

4    collect additional sums from distressed borrowers prior to foreclosure.

5       27.    Under California's non-judicial foreclosure rules, by electing to foreclose, Aurora

6    loses the right to collect any amount owed on the loan that exceeds the amount paid toward the

7    loan through the foreclosure process. Thus, when a home is worth less than the amount owed –

8    which is especially common in the sub-prime and Alt-A market generally serviced by Aurora – the

9    borrower does not have to repay, and Aurora has no means to collect, any arrearage or missed

10   payments on the loan(s).

11      28.    If Aurora can convince distressed borrowers to make payments on a loan which is

12   already in default, **then foreclose**, Aurora and its investors reap a windfall in fees and interest that

13   they would otherwise be waiving through foreclosure. This is precisely what Aurora accomplishes

14   through its Workout Agreement scheme.

15      29.    In her testimony, Alys Cohen explained why loan servicers, such as Aurora, do not

16   want their customers to qualify for loan modifications:

> Creating affordable and sustainable loan modifications for distressed
> homeowners on a loan-by-loan basis is labor intensive. Under many
> current pooling and servicing agreements, additional labor costs
> incurred by servicers engaged this process are not compensated by
> the loan owner. By contrast, servicers' costs in pursuing a
> foreclosure are compensated. In a foreclosure, a servicer gets paid
> before an investor; in a loan modification, the investor will usually
> continue to get paid first. Under this cost and incentive structure, it
> is no surprise that servicers continue to push homeowners into less
> labor-intensive repayment plans, non-HAMP loan modifications, or
> foreclosure.

Cohen Testimony, p. 15.

24      30.    Economic factors that encourage Aurora to offer illusory Workout Agreements

25   include the following:[6]

_____

[6]    *See* Thompson, Diane E., *Why Servicers Foreclose When They Should Modify and Other
Puzzles of Servicer Behavior*, National Consumer Law Center (October 2009).

- Aurora may be required to repurchase loans from the investor in order to permanently modify the loan. This presents a substantial cost and loss of revenue that can be avoided by keeping the loan in a state of lingering default until foreclosure.

- The monthly service fee that Aurora, as the servicer, collects as to each loan it services in a pool of loans is calculated as a fixed percentage of the unpaid principal balance of the loans in the pool. Consequently, modifying a loan to reduce the principal balance results in a lower monthly fee to the servicer.

- Fees that Aurora charges borrowers that are in default constitute a significant source of revenue. Aside from income Aurora directly receives, late fees and process fees are often added to the principal loan amount thereby increasing the unpaid balance in a pool of loans and increasing the amount of the servicer's monthly service fee.

- Entering into a permanent modification will often delay a servicer's ability to recover advances it is required to make to investors of the unpaid principal and interest payment of a non-performing loan. The servicer's right to recover expenses from an investor in a loan modification, rather than a foreclosure, is often less clear and less generous.

**E.   Plaintiffs' Workout Agreement**

    **1.   Mauder and Alice Chao**

31.   The Chaos purchased their home in San Jose, California in 1988. The Chaos refinanced their property in 1993, and again in 2003 for $286,000. On January 3, 2006, the Chaos refinanced into a note with Central Pacific Mortgage Company (the "Chao Note").

32.   The original principal amount of the Note was $468,750. Aurora was the loan servicer for the Chao Note.

33.   In late 2008 the Chaos were suffering financial hardship as a result of failed investments and a drop in income as a result of Mr. Chao being temporarily laid off from his employment as an engineer. This loss of income resulted in the Chaos seeking to reduce their expenses and to seek help from their creditors in reducing these expenses, including the Chao Note.

34.   Beginning in January and throughout the following months in 2009, the Chaos contacted Aurora, seeking review of their loan for possible modification. Aurora offered a Workout Agreement. *See* Attachment A.

35.     The Workout Agreement was drafted in its entirety by Aurora and presented as non-negotiable. The Chaos were not given an opportunity to suggest different or alternate terms. The Chaos were not advised to seek legal counsel or advised that Aurora would offer the Workout Agreement if the Chaos retained counsel.

36.     The Workout Agreement required the Chaos to make an initial payment of $5,668 with the return of the executed agreement by October 15, 2009. Thereafter, the Chaos were required to make payments of $3,100 by the 20th of each month, including October 20, 2009, until February 20, 2010.

37.     The Chaos were also required to provide certain documents and information to Aurora, which they did; and under the terms of the Workout Agreement, the Chaos waived certain legal rights and admitted certain liabilities to Aurora.

38.     Aurora agreed in return to waive its legal rights under the Chao Note for the duration of the Workout Agreement. *See* Attachment A, ¶ 3.

39.     The Workout Agreement specified that the Chao's payments would not cover the entire arrearage on the loan (which would make it current), so one of four things would have to occur at the end of the six-month term to avoid continued collection efforts, including foreclosure.

40.     The four possibilities were: (1) full reinstatement; (2) payment in full; (3) loan modification agreement; or (4) other loan workout option that Aurora may offer. *See* Attachment A, ¶ b.

41.     The Chaos made each of the payments as they had promised and provided all of the written materials and documents that Aurora sought for evaluating their loan.

42.     After the Workout Agreement term ended on February 20, 2010, Aurora asked the Chaos to continue making the payment set forth the Workout Agreement while it claimed it continued its review for possible loan modification.

43.     The Chaos made additional payments of $3,100 on or about March 12, 2010, and on or about April 20, 2010.

44.     Aurora confirmed that all required documents were received and, as late as May 12, 2010, told the Chaos that foreclosure was "on hold" while the loan was reviewed for modification.

45.   The Chaos made their ninth payment under the Workout Agreement (as extended by Aurora), again for $3,100, on May 18, 2010.

46.   On May 28, 2010, the Chaos were served with a Notice to Vacate, indicating that their home had been sold in foreclosure on May 24, 2010.

47.   The Chaos received no notice whatsoever that the foreclosure process had been reinstated nor, in fact, completed.

48.   Importantly, the Chaos were not notified that they had been denied a modification or another workout option and – lacking notice of Aurora's intent to foreclose – were not given an opportunity to cure through reinstatement or pay-off as specifically contemplated by the Workout Agreement.

49.   The Chaos were not informed by Aurora of the remaining amount of arrearage on the Note such that it could be reinstated by the Chaos, and they were not informed of the amount required to pay off the loan in its entirety.[7]

50.   Aurora, having initiated foreclosure on the Chaos' home, was entitled only to the proceeds of any such foreclosure sale and was not entitled under California law to collect additional fees, payments, or interest from the Chaos through any other means.

51.   Had the Chaos known that Aurora would not notify them that they were denied a modification and not provide an opportunity to cure, as promised in the Workout Agreement, the Chaos would not have entered into the Workout Agreement. Instead, the Chaos would have let the already initiated foreclosure run its course, and would not have paid $33,568 in return for Aurora's illusory promise of an opportunity to cure.

### 2.   Deogeneso and Glorina Palugod

52.   The Palugods purchased their home in San Jose, California in 1987. The Palugods refinanced their property in 2004. On May 8, 2007, the Palugods refinanced into a note with Lehman Brothers Bank (the "Palugod Note").

---

[7]   Though not an element of their claims for rescission in this case, had the Chaos been informed that they were denied a modification and the amount required to reinstate the loan, having already paid over $33,500 into their arrearage, the Chaos would have paid the remainder due to bring the loan current and avoid foreclosure.

CLASS ACTION COMPLAINT                               - 10 -

010191-11 377040 V1

53.     The original principal amount of the Palugod Note was $740,000.  Aurora was the loan servicer for the Palugod Note.

54.     In early 2009, the Palugods were suffering financial hardship as a result of an illness in their family and the death of a parent.  This hardship led to increased expenses and loss of income resulting in the Palugods seeking to reduce their expenses and to seek help from their creditors in reducing expenses, including the Palugod Note.

55.     Beginning in January throughout the following months in 2009, the Palugods contacted Aurora, seeking review of their loan for possible modification.  Aurora offered a Workout Agreement. *See* Attachment B.

56.     The Workout Agreement was drafted in its entirety by Aurora and presented as non-negotiable.  The Palugods were given no opportunity to suggest different or alternate terms.  The Palugods were not advised to seek legal counsel or advised that Aurora would offer the Workout Agreement if the Palugods retained counsel.

57.     The Workout Agreement required the Palugods to make an initial payment of $2,466.68 with the return of the executed agreement by October 1, 2009.  Thereafter, the Palugods were required to make payments of $2,653 on November 1 and December 1, 2009, and January 1, 2010.

58.     The Palugods were also required to provide certain documents and information to Aurora, which they did; and under the terms of the Workout Agreement, the Palugods waived certain legal rights and admitted certain liabilities to Aurora.

59.     Aurora agreed in return to waive its legal rights under the Palugod Note for the duration of the Workout Agreement. *See* Attachment B, ¶ 3.

60.     The Workout Agreement specified that the Palugods' payments would not cover the entire arrearage on the loan (which would make it current), so one of four things would have to occur at the end of the term to avoid continued collection efforts, including foreclosure.

61.     The four possibilities were: (1) full reinstatement; (2) payment in full; (3) loan modification agreement; or (4) other loan workout option that Aurora may offer. *See* Attachment B, ¶ b.

CLASS ACTION COMPLAINT                                          - 11 -

010191-11 377040 V1

62.     The Palugods made each of the payments as they had promised and provided all of the written materials and documents that Aurora sought for evaluating their loan.

63.     After the original term of the Workout Agreement ended on January 1, 2010, Aurora asked the Palugods to continue making the payment set forth the Workout Agreement while it claimed it continued its review for possible loan modification.

64.     The Palugods made additional payments of $2,653 on or about February 1, 2010, March 1, 2010, April 1, 2010, May 1, 2010 and June 1, 2010.

65.     Aurora confirmed that all required documents were received and, as late as June 17, 2010, told the Palugods that their loan was being reviewed for modification.

66.     On June 29, 2010, the Palugods were served with a Notice to Vacate, indicating that their home had been sold in foreclosure on June 24, 2010.

67.     The Palugods received no notice whatsoever that the foreclosure process would not continue to be postponed.

68.     Importantly, the Palugods were not notified that they had been denied a modification or another workout option and – lacking notice of Aurora's intent to foreclose – were not given an opportunity to cure through reinstatement or pay-off.

69.     The Palugods were not informed by Aurora of the remaining amount of arrearage on the Note such that it could be reinstated by the Palugods, and they were not informed of the amount required to pay off the loan in its entirety.

70.     Aurora, having initiated foreclosure on the Palugods' home, was entitled only to the proceeds of any such foreclosure sale and was not entitled under California law to collect additional fees, payments, or interest from the Palugods through any other means.

71.     Had the Palugods known that Aurora would not notify them that they were denied a modification and not provide an opportunity to cure, as promised in the Workout Agreement, the Palugods would not have entered into the Workout Agreement. Instead, the Palugods would have let the already initiated foreclosure run its course, and would not have paid $23,690.68 in return for Aurora's illusory promise of an opportunity to cure. On information and belief, there are

CLASS ACTION COMPLAINT                              - 12 -

010191-11 377040 V1

1   thousands of Aurora customers who have suffered the same fate as the Chaos and the Palugods and

2   millions of dollars have been wrongfully and deceptively collected by Aurora.[8]

3   ## VI.   CLASS ALLEGATIONS

4       72.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on

5   behalf of themselves and a Class consisting of:

6           All California homeowners who have entered into a Workout
            Agreement with Defendant, made payments under the Workout
7           Agreement, and whose homes were foreclosed without such
            homeowners first receiving (1) notice that their modification requests
8           had been denied and (2) the opportunity to cure their default.

9       73.    Excluded from the Class are governmental entities, Defendant, its affiliates and

10   subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives,

11   their family members, the members of this Court and its staff.

12       74.    Plaintiffs do not know the exact size or identities of the members of the proposed

13   Class, since such information is in the exclusive control of Defendant.  Plaintiffs believe that the

14   Class encompasses thousands of individuals whose identities can be readily ascertained from

15   Defendant's books and records.  Therefore, the proposed Class is so numerous that joinder of all

16   members is impracticable.

17       75.    Based on the size of the payments made by Class members under the Workout

18   Agreements, Plaintiffs believe the amount in controversy well-exceeds $5 million.

19       76.    All members of the Class have been subject to and affected by the same conduct.

20   The claims are based on the terms of a form Workout Agreement between Aurora and Class

21   members. There are questions of law and fact that are common to the class, and predominate over

22   any questions affecting only individual members of the Class. These questions include, but are not

23   limited to the following:

24           a.   The nature, scope and operation of Aurora's obligations to its customers

25               under the Workout Agreements;

---

26   [8]     As of January 2010, Aurora reported 77,000 loans over 60 days delinquent.  If just one in
27   ten of these loans was foreclosed after being offered a Workout Agreement, then there could be
     over 7,700 victims of Aurora's scheme.  Even if these victims' damages were just half of the
28   $33,568 suffered by the Chaos, Class damages would exceed $125,000,000.

010191-11 377040 V1

b. Whether the Workout Agreements created any legally binding obligation on Aurora;

c. Whether the Workout Agreements were void *ab initio* for failure or partial failure of consideration;

d. Whether Aurora's failure to provide notice of its renewed intent to foreclose, thereby depriving customers of an opportunity to reinstate or pay-off their loans renders the Workout Agreements illusory;

e. Whether customers' consent to the Workout Agreements was the result of a mistake of fact, fraud or duress;

f. Whether Plaintiffs and Class members are entitled to rescind their Workout Agreements;

g. Whether, following rescission, Plaintiffs and Class members are entitled to the return of the consideration paid to Aurora under the Workout Agreements;

h. Whether Aurora breached its obligation of good faith and fair dealing by its failure to provide notice of its renewed intent to foreclose, thereby depriving customers of an opportunity to reinstate or pay-off their loans;

i. Whether Aurora's written representations to homeowners stating that they would have an opportunity to cure upon expiration of the Workout Agreement and then failing to notify customers of such opportunity prior to foreclosure constitutes an unfair or deceptive practice under the California Unfair Competition Law ("UCL"); and

j. Whether injunctive relief is appropriate.

77. The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and the other members of the Class were subject to the same conduct, were subject to the terms of the same agreement and were met with the same absence of notice prior to foreclosure.

78.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the Class's claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

79.     A class action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

80.     This putative class action meets the requirements of Federal Rules of Civil Procedure 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

81.     Aurora has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## VII.     CLAIMS FOR RELIEF

### COUNT I
### FOR RESCISSION AND RESTITUTION
### (CAL. CIV. CODE § 1689(B)(1))

82.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

83.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

84.     Consent to the Workout Agreements was not real or free in that it was obtained solely through the mistakes and fraud as herein alleged.  Plaintiffs thus seek to rescind the agreement under California Civil Code section 1689(b)(1).  The only consideration received by Plaintiffs, from Aurora, was the waiver of Aurora's legal rights for the duration of the Workout Agreement.  Since Aurora subsequently acted on these rights when it foreclosed Plaintiffs' home, Plaintiffs have retained no consideration that can be tendered back to Aurora prior to rescission.

### A.     Mistake of Fact

85.     The Workout Agreements were entered into under material mistakes of fact in that it was believed by Plaintiffs and the Class that the forbearance and opportunity to cure offered by Defendant were appropriate for their needs and were worth in excess of amounts paid under the

CLASS ACTION COMPLAINT                                  - 15 -

010191-11 377040 V1

1   Workout Agreement and waiver of their legal rights.  However, at the time of entering into the

2   Workout Agreements, it was unknown to Plaintiffs and the Class that the forbearance and

3   opportunity to cure Aurora offered were not appropriate for their needs and were not worth the

4   amounts paid as Defendant had no intention of providing an opportunity to cure at the expiration of

5   the Workout Agreement.

6          86.     Defendant knew or should have known that the Workout Agreements were not

7   appropriate for Plaintiffs' and the Class' needs and were not worth the amounts charged under the

8   Workout Agreements, but were only of nominal or no value.  Defendant used Plaintiffs' and the

9   Class' mistake to unfairly take advantage of Plaintiffs and the Class by obtaining payments under a

10  Workout Agreement, while Plaintiffs and the Class received nominal or no value therefore.

11         87.     Plaintiffs were induced to enter the Workout Agreements because of the mistaken

12  belief that the forbearance and opportunity to cure were appropriate for their needs and were worth

13  payments and waiver of rights made under the Workout Agreements.

14         88.     Plaintiffs and the Class would not have given apparent consent to the Workout

15  Agreements except for this mistaken belief.

16         89.     As a direct result of these material mistakes of fact, Plaintiffs and the Class were

17  damaged by paying thousands of dollars to Defendant that they would not have paid absent the

18  Workout Agreement scheme.

19  **B.     Fraud in the Inducement**

20         90.     Defendant represented that at the expiration of the Workout Agreements, Plaintiffs

21  and the Class would have an opportunity to cure their loan default through:  (1) reinstatement;

22  (2) payoff; (3) loan modification; or (4) some other workout.

23         91.     At the time that Defendant made these representations, Defendant knew that they

24  were not true.  Defendant had no intention to provide an opportunity to cure prior to foreclosing on

25  Plaintiffs' and the Class' homes.

26         92.     Defendant made these representations with the purpose of persuading Plaintiffs and

27  the Class to enter into the Workout Agreements.

28         93.     Plaintiffs and the Class reasonably relied on these representations.

CLASS ACTION COMPLAINT                          - 16 -

010191-11  377040.V1

94.     Plaintiffs and the Class would not have entered into the Workout Agreements had they known that these representations were not true.

95.     Having lost their homes to foreclosure notwithstanding the Workout Agreements and the monies paid thereunder, Plaintiffs and the Class derived no benefits from the Workout Agreements and have retained nothing of value provided by Aurora to tender in advance of rescission.

96.     Plaintiffs and the Class seek rescission of the agreement as a result of these material mistakes of fact and fraud. Plaintiffs have no other adequate remedy at law and will suffer irreparable harm if the Workout Agreements are not rescinded and if the payments wrongfully collected are not returned.

## COUNT II
## FOR RESCISSION AND RESTITUTION
### (CAL. CIV. CODE § 1689(B)(2)-(4))

97.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

98.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

99.     As consideration for the Workout Agreements, Plaintiffs and the Class made payments to Defendant totaling thousands of dollars.

100.    As return consideration, Defendant waived certain legal rights and promised to provide Plaintiffs and the Class with an opportunity to cure the default of their loans upon the expiration of the Workout Agreements.

101.    Defendant's consideration to Plaintiffs and the Class failed in material part because Defendant, through its own fault: (1) acted on the rights it had waived; and (2) had no intention to and did not provide to Plaintiffs and the Class the opportunity to cure that it had promised.

102.    Defendant's consideration to Plaintiffs and the Class became entirely void because Defendant elected to foreclose and provision of the opportunity to cure was completely within Defendant's control and discretion.

CLASS ACTION COMPLAINT                                    - 17 -

010191-11 377040 V1

103.   Defendant's consideration to Plaintiffs and the Class, before it was rendered, failed in a material respect because Defendant elected to foreclose on Plaintiffs' and the Class' homes without providing any opportunity to cure as Defendant had promised.

104.   Plaintiffs and the Class would not have entered into the Workout Agreements had they known that Defendant's consideration would fail in material part or be rendered void.

105.   Having lost their homes to foreclosure notwithstanding the Workout Agreements and the monies paid thereunder, Plaintiffs and the Class derived no benefits from the Workout Agreements and have nothing of value provided by Aurora to tender in advance of rescission.

106.   Plaintiffs and the Class seek rescission of the Workout Agreement as a result of these failures of consideration. Plaintiffs have no other adequate remedy at law and will suffer irreparable harm if the Workout Agreements are not rescinded and if the fees paid are not returned.

## COUNT III
## NEGLIGENT MISREPRESENTATION

107.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

108.   Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

109.   Defendant had a legal duty to disclose to Plaintiffs and the Class, at and before the times of offering the Workout Agreements, all facts that would have materially affected the desirability of entering into the Workout Agreements offered Plaintiffs and the Class. Whether Plaintiffs' and Class members' homes would be foreclosed by Aurora without Aurora first providing the opportunity to cure contemplated by the Workout Agreements was a material fact that Defendant not only knew about, but had intentionally created.

110.   Such knowledge was completely in the possession of Defendant and was unknown to Plaintiffs and the Class. The failure to disclose such material facts was uniform in the offering of the Workout Agreements to Plaintiffs and the Class.

111.   Defendant uniformly represented to Plaintiffs and the Class through their written materials that there would be an opportunity to cure default at the expiration of the Workout

1    Agreements. Defendant knew, or in the exercise of reasonable diligence should have known, that

2    Plaintiffs and the Class would rely upon such representations.

3         112.    Plaintiffs and the Class members did reasonably rely on those representations.

4         113.    Had Plaintiffs and the Class known about these material facts, they would not have

5    entered into the Workout Agreements.

6         114.    As a result of the conduct of Defendant, Plaintiffs and the Class have been damaged.

7                              **COUNT IV**
                          **UNJUST ENRICHMENT**
8
         115.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.
9
         116.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the
10
     Class described above.
11
         117.    As a result of the Workout Agreement scheme, Defendant extracted millions of
12
     dollars in payments from Plaintiffs and the Class that they would not have been entitled to collect
13
     had they not engaged in the scheme as described herein.
14
         118.    Defendant is aware of its receipt of the above-described benefits.
15
         119.    Defendant received the above-described benefits to the detriment of Plaintiffs and
16
     the Class.
17
         120.    Defendant continues to retain the above-described benefits to the detriment of
18
     Plaintiffs and the Class.
19
         121.    As a result of Defendant's unjust enrichment, Plaintiffs and the Class have sustained
20
     damages in an amount to be determined at trial and seek full disgorgement and restitution of
21
     Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the wrongful conduct
22
     alleged above.
23
                               **COUNT V**
24
     **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
25                        **(PLED IN THE ALTERNATIVE)**

26        122.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

27        123.    Defendant Aurora and Plaintiffs are parties to the Workout Agreements which state

28    as follows:

CLASS ACTION COMPLAINT                              - 19 -

010191-11 377040 V1

1

        3. Lender's Forbearance.  Lender shall forbear from exercising any
or all of its rights or remedies now existing or arising during the term
2     of this agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 6.

3

                     ....

4

        The aggregate Plan payment will be insufficient to pay the
5     Arrearage.  At the Expiration Date, a portion of the arrearage will
still be outstanding.  Because payment of the Plan payments will not
6     cure the arrearage, Customer's account will remain delinquent.
Upon the expiration date, Customer must cure the Arrearage through
7     a full reinstatement, payment in full, loan modification agreement or
other workout option that lender may offer (individually and
8     collectively, a "cure method. . . ."

9        124.   Defendant has the sole ability to provide borrower notice, payoff figures,

10  reinstatement figures, or "other work out options" to enable the Plaintiff to avail themselves of a

11  "cure method."

12       125.   Defendant foreclosed on Plaintiffs' homes in violation of the covenant of good faith

13  and fair dealing associated with Paragraph 3 of the Workout Agreement when it did so without

14  providing to Plaintiff the ability or opportunity to effectuate a cure method.

15       126.   The Agreement imposed on Defendant the duty of good faith and fair dealing.  This

16  covenant imposes upon each contracting party the duty not to do anything which prevents

17  realization of the benefits of the contract.  It also imposes upon each contracting party the duty to

18  do everything that the contract presupposes that each party will do to accomplish its purpose.

19       127.   The actions of Defendant have deprived Plaintiffs of the benefits of the Workout

20  Agreement, to which it is legally entitled.  Specifically, by failing to give notice that modification

21  had been rejected and that the foreclosure process re-initiated, Plaintiffs lost the opportunity to cure

22  contemplated in the Workout Agreements.  Defendant prevented Plaintiffs from availing

23  themselves of the ability to cure and avoid foreclosure.

24       128.   Defendants breached the covenant of good faith and fair dealing implicit in the

25  Workout Agreement.  The parties mutually intended and understood Section A2.b of the Workout

26  Agreement to require Defendant to provide work out options or the ability to exercise other "cure

27  methods."  By foreclosing on Plaintiffs' properties without first giving any notice that modification

28

CLASS ACTION COMPLAINT            - 20 -

1    had been rejected and the foreclosure process restarted, Defendant failed to provide a "cure

2    method" pursuant to the agreement.

3         129.    As a direct and proximate result of defendant's breach of the covenant of good faith

4    and fair dealing, Plaintiffs have been damaged in an amount to be proved at trial, but no less than

5    the amounts paid pursuant to the Workout Agreements.

6                              **COUNT VI**
                  **VIOLATION OF THE UNFAIR COMPETITION LAW**
7                  **(CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)**

8         130.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

9         131.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the

10   Class described above.

11        132.    The conduct of Aurora as set forth herein constitutes unfair or deceptive acts or

12   practices, including its practice of leading borrowers to believe that they will have an opportunity

13   to cure the default of their loans upon expiration of the Workout Agreements and its practice of

14   temporarily delaying foreclosures only to obtain additional moneys from borrowers that under

15   California's foreclosure laws it would not be entitled to collect.

16        133.    Aurora's conduct as set forth herein has been unfair in violation of California's

17   UCL sections 17200, *et seq.* because the acts or practices violate established public policy, and

18   because the harm they cause to consumers in California greatly outweighs any benefits associated

19   with those practices.

20        134.    Aurora's conduct as set forth herein resulted in loss of money or property to

21   Plaintiffs and Class members.

22                         **VIII.   PRAYER FOR RELIEF**

23        WHEREFORE, the Plaintiffs respectfully request the following relief:

24        A.      Certify this case as a class action and appoint the named Plaintiffs to be Class

25   representatives and their counsel to be Class counsel;

26        B.      Enter a judgment declaring the Workout Agreements to be void *ab initio* and subject

27   to rescission by Plaintiffs and the Class;

28

CLASS ACTION COMPLAINT                          - 21 -

010191-11 377040 V1

1       C.     Grant a permanent or final injunction enjoining Aurora's agents and employees,

2  affiliates and subsidiaries, from continuing to offer illusory Workout Agreements;

3       D.     Award restitution to the Plaintiffs and the Class in amounts to be proven at trial;

4       E.     Award Plaintiffs the costs of this action, including the fees and costs of experts,

5  together with reasonable attorneys' fees;

6       F.     In the alternative, if the Workout Agreements are deemed enforceable, enter a

7  judgment that Defendant has breached its duty of good faith and fair dealing and award damages to

8  Plaintiffs as may be proven at trial; and

9       G.     Grant Plaintiffs and the Class such other and further relief as this Court finds

10  necessary and proper.

## IX.    JURY TRIAL DEMANDED

12     Plaintiffs demand a trial by jury on all issues so triable.

13  DATED: August 2, 2010

14                   HAGENS BERMAN SOBOL SHAPIRO LLP

16                  By _____
                          SHANA E. SCARLETT

17                   715 Hearst Avenue, Suite 202

18                   Berkeley, CA 94710
                   Telephone: (510) 725-3000

19                   Facsimile: (510) 725-3001
                   shanas@hbsslaw.com

21                   Steve W. Berman
                   Thomas E. Loeser (202724)

22                   HAGENS BERMAN SOBOL SHAPIRO LLP
                   1918 Eighth Avenue, Suite 3300

23                   Seattle, WA 98101
                   (206) 623-7292

24                   steve@hbsslaw.com
                   toml@hbsslaw.com

26                   Andrew Oldham (144287)
                   LAW OFFICE OF ANDREW OLDHAM

27                   901 Campisi Way, Suite 248
                   Campbell, CA 95008

CLASS ACTION COMPLAINT             - 22 -

Telephone:  (888) 842-4930

Attorneys for Plaintiffs and the Class